UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **ABDELRAHMAN YASSER HASSANE**; | ) |
| | ) **Case No.** |
| Plaintiff, | ) **Hon.** |
| | ) |
| v. | ) |
| | ) |
| **TRIMEDX, d/b/a TRIMEDX, INC. OF MICHIGAN,** an Indiana for-profit domestic corporation; | ) |
| | ) |
| **MEDXCEL, LLC,** an Indiana domestic limited liability corporation; | ) |
| | ) |
| **AH HOLDINGS, LLC,** an Indiana domestic limited liability corporation; | ) |
| | ) |
| **DOUG HOLMBERG**; | ) |
| | ) |
| **SCOTT C. SCANDALITO**; and, | ) |
| | ) |
| **MIKE L. PLAINSKI**; | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff, **ABDULRAHMAN YASSER HASSANE**, by and through his undersigned counsel, Pastor & Associates, P.C. and Council on American-Islamic Relations, Michigan (CAIR-MI), and for his Complaint against Defendants **TRIMEDX, d/b/a TRIMEDX, INC. OF MICHIGAN; MEDXCEL, LLC; DOUG HOLMBERG; SCOTT SCANDALITO; and MIKE L. PLAINSKI;** (collectively "Defendants"), for religious discrimination, retaliation, and hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42

1

U.S.C. § 2000(e) *et seq.* ("Title VII"), and for violations of the Michigan Elliot-Larsen Civil Rights Act, M.C.L. § 37.2102 *et seq.* ("ELCRA"), states as follows:

### Parties

1.Plaintiff Abdelrahman Yasser Hassane is an American Muslim of Egyptian national origin residing in Wayne County, Michigan, and within this district.  He was at all relevant times an "employee" as the term is defined in 42 U.S.C. § 2000(e) et seq., and M.C.L. § 37.2102 et seq.

2.Defendant TRIMEDX, INC. ("TriMedx") is a for-profit domestic corporation incorporated under the laws of Indiana and is headquartered at 5451 Lakeview Parkway, South Drive, Indianapolis, IN 46268.  Defendant TRIMEDX, INC., a healthcare technology management organization, does business as TRIMEDX, INC. OF MICHIGAN and has a registered office at Columbia Center, Suite 1200, 201 W. Big Beaver, Troy, MI 48084. Defendant TriMedx regularly and systematically conducts business in the State of Michigan as TRIMEDX, INC. OF MICHIGAN, including, but not limited to, conducting business at 22101 Moross Road, Detroit, MI 48236.  Defendant TriMedx was at all relevant times an "employer" as the term is defined in 42 U.S.C. § 2000(e) *et seq.*, and M.C.L. § 37.2102 *et seq*.

3.Defendant MEDXCEL, LLC ("Medxcel") is a domestic limited liability company incorporated under the laws of Indiana and is headquartered at 5451 Lakeview Parkway, South Drive, Indianapolis, IN 46268.  Defendant TriMedx is Defendant Medxcel's largest subsidiary.  Defendant Medxcel regularly and systematically conducts business in the State of Michigan as TRIMEDX, INC. OF MICHIGAN, including, but not limited to, conducting business at 22101 Moross Road, Detroit, MI 48236.  Defendant Medxcel was at all relevant

times an "employer" as the term is defined in 42 U.S.C. § 2000(e) *et seq.*, and M.C.L. § 37.2102 *et seq*.

4. Defendant AH HOLDINGS, LLC ("Ascension") is a domestic limited liability company incorporated under the laws of Indiana and is headquartered at 5451 Lakeview Parkway, South Drive, Indianapolis, IN 46268. Defendant Ascension does business as ASCENSION HOLDINGS and TRIMEDX INTERNATIONAL. Defendant Ascension is the parent company of Defendant Medxcel. Defendant Ascension regularly and systematically conducts business in the State of Michigan as TRIMEDX, INC. OF MICHIGAN, including, but not limited to, conducting business at 22101 Moross Road, Detroit, MI 48236. Defendant Ascension was at all relevant times an "employer" as the term is defined in 42 U.S.C. § 2000(e) *et seq.*, and M.C.L. § 37.2102 *et seq*.

5. Defendant Doug Holmberg is an individual who had supervisory authority and control over Plaintiff during the time Plaintiff worked with Defendants and who had personally engaged in discriminatory behavior against Plaintiff. Defendant Holmberg is the Director of Clinical Engineering at TriMedx.

6. Defendant Scott Scandalito is an individual who had supervisory authority and control over Plaintiff during the time Plaintiff worked with Defendants and who had personally engaged in discriminatory behavior against Plaintiff. Defendant Scandalito was at all relevant times herein an employee of Defendants, and was employed as the Imaging Engineering Manager.

7. Defendant Mike Plainski is an individual who had supervisory authority and control over Plaintiff during the time Plaintiff worked with Defendants and who had personally engaged in discriminatory behavior against Plaintiff. Defendant Plainski was at

all relevant times herein an employee of Defendants, and was employed as the Director of Clinical Engineering.

## Jurisdiction and Venue

8. Plaintiff's claims for discrimination on the basis of religion and national origin, retaliation, and hostile work environment in violation of Title VII are brought pursuant to 42 U.S.C. § 2000(e) *et seq*.

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332 and federal common law.

10. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

11. This Court has personal jurisdiction over Defendants because Defendants conduct business in the State of Michigan.

12. A substantial part of the unlawful acts alleged herein were committed within the jurisdiction of the United States District Court for the Eastern District of Michigan.

13. Venue is proper under 42 U.S.C. § 1391(b) and 42 U.S.C. § 1391(d) as to Defendants because Defendants conduct business in this judicial district, and because this judicial district is where Plaintiff resides and where a substantial part of the events or omissions giving rise to the claims occurred.

## Administrative History

14. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

15. The EEOC issued Plaintiff a notice of right to sue, which was mailed to Plaintiff on or about December 15, 2015. **Exhibit A – EEOC Notice of Right to Sue.**

**Factual Background**

16. Abdelrahman Yasser Hassane ("Hassane") graduated from Lawrence Tech University with a Bachelor of Science in Biomedical Engineering.

17. On February 3, 2014, Hassane submitted an application to Defendant TriMedx for the Tech Plus One position (also known as Plus One Tech), a fully benefitted training program, for which he is qualified through his education.

18. According to Defendants' website, "[t]he Plus One Tech receives clinical equipment repair training under the close supervision of TriMedx management. Duties include, but are not limited to, planned maintenance inspections, calibrations, repairs of Non-complex equipment, inventory projects at new customer sites, validation and inspection of clinical equipment for completeness, mechanical and electrical safety, and proper operation. The Plus One Tech is trained by experienced technicians in the troubleshooting and major repair of complex equipment. The individual demonstrates adherence to the TriMedx core values in all professional interactions by showing respect to all people, creating real value, initiating meaningful change, and exhibiting integrity."[1]

19. On March 24, 2014, Hassane was offered and accepted a job position as a Tech Plus One.

20. Hassane's employment with TriMedx commenced on April 28, 2014.

21. Hassane's immediate supervisors were Defendant Doug Holmberg and Defendant Scott Scandalito. Mike Plainski also had supervisory authority over Hassane.

---

[1] *See* https://mer-medxcel.icims.com/jobs/5812/tech-plus-one/job.

22.     For the first few months of his employment, Hassane was provided training in accordance with program guidelines and similar to the training provided to all Tech Plus One employees.

23.     Initially, and in accordance with program guidelines, Hassane was provided online training from August 28, 2014 to May 9, 2014 by an Imaging Technician I. The purpose of the online training was to train Hassane on Defendants' computer system.

24.     Subsequently, on or about May 9, 2014 through July 9, 2014, also in accordance with program guidelines, Hassane was trained by an Imaging Engineer III with over 20 years of experience.

25.     On July 9, 2014, Hassane emailed Defendant Holmberg and requested time off of work to celebrate the Eid Al-Fitr holiday in accordance with his sincerely-held religious belief of Islam.

26.     Eid Al-Fitr is an important religious holiday celebrated by Muslims worldwide that marks the end of Ramadan, the Islamic holy month of fasting.

27.     Because Hassane wanted to celebrate Eid Al-Fitr with his family in Egypt, he requested two weeks off of work.

28.     TriMedx's leave policy provided 6 hours of paid time off for every two weeks worked since the commencement of employment.

29.     At the time that Hassane asked for time off for Eid Al-Fitr, he had accrued 82 hours of paid time off and was therefore eligible to receive the two weeks off of work that he requested.

30.     Hassane's July 9, 2014 email to Defendant Holmberg was the first time he expressed his adherence to the Islamic faith in the workplace.

31. Upon information and belief, Hassane's request for time off of work to celebrate the Eid Al-Fitr holiday did not cause any hardship, whatsoever, in the conduct of Defendants' business and the time Hassane requested off was in line with TriMedx's own policy.

32. Although Hassane's request for vacation time was granted by Defendants, suddenly, as a result of expressing his adherence to the Islamic faith, Hassane was removed from the training program.

33. Instead, he was transferred to "train" in ultrasounds for more than one year by another trainee who had less than one year experience.

34. Upon information and belief, no other non-Muslim Tech Plus One employee received training by another trainee.

35. Moreover, for over one year, Hassane received only training in ultrasound.

36. During that time, Hassane worked on over 44 projects by himself, including the times that the trainee was on vacation.

37. Hassane was not provided with training in other areas, as other employees were provided, in accordance with program guidelines, despite his repeated requests to be trained in other areas, including CT Scans, X-rays, magnetic resonance imaging ("MRI") and mammography.

38. Hassane asked Defendants Holmberg and Scandalito to be trained in other areas pursuant to the program guidelines on several occasions; however each time, they responded that training in other areas was "not available," and instead kept him on ultrasound training only.

39. Moreover, Hassane was not provided with the necessary tools to conduct his training despite his repeated requested for the necessary tools.

40. Upon information and belief, no other non-Muslim Plus One Tech employees were denied the necessary tools to conduct their training.

41. On February 3, 2015, Defendant Scandalito informed Hassane that he was placed on three-month probation because he had not "observed" Hassane and because employees are placed on three-month probation at the commencement of employment.

42. Hassane was placed on probation despite the fact that Hassane had already completed his three month probation when he was initially hired in April 28, 2014.

43. Hassane told Defendant Scandalito that he had been employed for almost one year, and accordingly should not be placed on probation again.

44. However, Defendant Scandalito responded that he was also placed on probation because he did not "observe" him.

45. Moreover, upon requesting multiple times that he be given a salary raise and a promotion, Defendant Scandalito told Hassane that he was not eligible for a salary raise or a promotion because he was not trained in ultrasound, or in any other needed areas including CT Scans, X-rays, magnetic resonance imaging ("MRI") and mammography – areas that Defendants refused to train him in.

46. Upon information and belief, all non-Muslim Tech Plus One employees that started their employment on or about the same time as Hassane were given a salary raise and a promotion.

47. Instead, Hassane was transferred to Indiana to do inventory, a low-level job that does not require a degree or training.

48. Hassane was humiliated and ashamed to be placed into a low level job while all other non-Muslim Plus One Techs hired on or about the same time as Hassane were employed as biomedical technicians.

49. Upon bringing this demotion to the attention of Defendant Scandalito and Defendant Plainski, Defendant Scandalito called Hassane and told him that the only position available was inventory, and if he refused to do his job he would be fired.

50. Moreover, Defendant Scandalito told Hassane that he would not be promoted or receive a salary raise.

51. Upon information and belief, Hassane was demoted and denied proper training, a promotion and a salary raise because of his Muslim faith.

52. Upon information and belief, Defendants' actions were an attempt to force Hassane to quit his employment with Defendants.

## COUNT I
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### Religious Discrimination

53. Plaintiff hereby realleges and incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

54. Title VII prohibits employers from discriminating against employees on the basis of their religious observance and practice unless the observance and practice causes an undue hardship to the conduct of the business.

55. Defendants discriminated against Plaintiff by demoting him to do inventory and denying him proper training pursuant to program guidelines, a promotion and a salary raise.

9

56. Defendants did not subject employees of other faiths to the same discriminatory and disparate treatment.

57. The aforementioned acts of Defendants were willful, reckless, and malicious acts of unlawful discrimination against Plaintiff, because Plaintiff expressed his adherence to the Islamic faith, in violation of the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 et seq.

58. As a direct and proximate result of Defendants' actions, Plaintiff has suffered emotional distress, inconvenience, lost wages and benefits, and other consequential damages.

WHEREFORE, Plaintiff requests this Honorable Court grant relief in the form described in the Prayer for Relief below, plus all such other relief this Court deems just and proper including costs and attorneys' fees incurred in this action.

## COUNT II
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### Disparate Treatment

59. Plaintiff hereby realleges and incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

60. Title VII prohibits employers from discriminating against employees on the basis of their religious observance and practice.

61. Defendants discriminated against Plaintiff by demoting him to do inventory and denying him proper training pursuant to program guidelines, a promotion and a salary raise.

62. Defendants did not subject employees of other faiths to the same discriminatory and disparate treatment.

63. The aforementioned acts of Defendants were willful, reckless, and malicious acts of unlawful discrimination against Plaintiff, because Plaintiff expressed his adherence to the Islamic faith, in violation of the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 et seq.

64. As a direct and proximate result of Defendants' actions, Plaintiff has suffered emotional distress, inconvenience, lost wages and benefits, and other consequential damages.

WHEREFORE, Plaintiff requests this Honorable Court grant relief in the form described in the Prayer for Relief below, plus all such other relief this Court deems just and proper including costs and attorneys' fees incurred in this action.

### COUNT III
### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
**Hostile Work Environment**

65. Plaintiff hereby realleges and incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

66. Defendants subjected Hassane to an unwelcome hostile work environment based on his religion, Islam, through severe and pervasive actions that altered the conditions of his employment, including, but not limited to, not addressing his complaints about discrimination and harassment; and, demoting him to do inventory and denying him proper training pursuant to program guidelines, a promotion and a salary raise, on the basis of his religion, Islam.

67. Despite Plaintiff's repeated complaints to supervisors about the hostile work environment, Defendants failed to take any appropriate action to redress the discriminatory and hostile work environment conditions imposed on Plaintiff.

68. The aforementioned acts of Defendants were willful, reckless, and malicious acts of unlawful discrimination against Plaintiff, because Plaintiff expressed his adherence to the Islamic faith, in violation of the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 et seq.

69. As a direct and proximate result of Defendants' actions, Plaintiff has suffered emotional distress, inconvenience, lost wages and benefits, and other consequential damages.

WHEREFORE, Plaintiff requests this Honorable Court grant relief in the form described in the Prayer for Relief below, plus all such other relief this Court deems just and proper including costs and attorneys' fees incurred in this action.

### COUNT IV
### VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT
**Religious Discrimination and Disparate Treatment**

70. Plaintiff hereby realleges and incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

71. Michigan Elliot-Larsen Civil Rights Act, M.C.L. § 37.2101 et seq. prohibits employers from discriminating against employees on the basis of religion.

72. Defendants' above-described actions, policies, course of conduct, or pattern of practice that mandate or permit the above-described treatment of Plaintiff is discriminatory and constitutes an action that targets religious conduct for disparate treatment.

73. Defendants took adverse action against Hassane, including demoting him to do inventory and denying him proper training pursuant to program guidelines, a promotion and a salary raise, on the basis of his religion, Islam.

74. Defendants did not subject employees of other faiths to the same discriminatory treatment.

75. The aforementioned acts of Defendants were willful, reckless, and malicious acts of unlawful discrimination against Hassane, because of his religion, Islam, in violation of the Michigan Elliot-Larsen Civil Rights Act, M.C.L. § 37.2101 et seq.

76. As a direct and proximate result of Defendants' actions, Hassane has suffered emotional distress, inconvenience, lost wages and benefits, and other consequential damages.

WHEREFORE, Plaintiff requests this Honorable Court grant relief in the form described in the Prayer for Relief below, plus all such other relief this Court deems just and proper including costs and attorneys' fees incurred in this action.

## COUNT V
## VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT
### Hostile Work Environment

77. Plaintiff hereby realleges and incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

78. Defendants subjected Hassane to an unwelcome hostile work environment based on his religion, Islam, through severe and pervasive actions that altered the conditions of his employment, including, but not limited to, not addressing his complaints about discrimination and harassment; and, demoting him to do inventory and denying him proper

training pursuant to program guidelines, a promotion and a salary raise, on the basis of his religion, Islam.

79. Despite Hassane's repeated complaints to Defendants about the hostile work environment, Defendants failed to take any appropriate action to redress the discriminatory and hostile work environment conditions imposed on Hassane.

80. The aforementioned acts of Defendants were willful, reckless, and malicious acts of unlawful discrimination against Hassane because of his race and religion and have deprived Hassane the enjoyment of all benefits, privileges, terms, and conditions of his employment relationship in violation of the Michigan Elliot-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq*.

81. As a direct and proximate result of Defendants' actions, Hassane has suffered emotional distress, inconvenience, lost wages and benefits, and other consequential damages.

WHEREFORE, Plaintiff requests this Honorable Court grant relief in the form described in the Prayer for Relief below, plus all such other relief this Court deems just and proper including costs and attorneys' fees incurred in this action.

## Prayer for Relief

WHEREFORE, Plaintiff requests that this Honorable Court enter judgment in his favor and against Defendants on each and every count in this Complaint, and enter an Order awarding the following relief:

1. Payment for all economic damages, including but not limited to, back pay, front pay, and lost benefits;

2. Payment for non-economic damages, including emotional harm;

3. Attorneys' fees and costs;

4. Punitive damages;

5. Statutory damages; and,

6. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

NOW COMES Plaintiff, by and through his undersigned counsel, and hereby demands trial by jury of the above-referenced causes of action.

Respectfully submitted,

CARRIE PASTOR & ASSOCIATES, P.C.

*/s/ Carrie Pastor*
CARRIE PASTOR (P43551)
Attorney for Plaintiff
525 East Big Beaver Rd., Ste. 206
Troy MI 48083
Phone: (248) 619-0065
consultin4u@yahoo.com

and

COUNCIL ON AMERICAN-ISLAMIC RELATIONS, MICHIGAN

*/s/ Lena Masri*
LENA F. MASRI (P73461)
Attorney for Plaintiff
30201 Orchard Lake Rd., Ste. 260
West Bloomfield, MI 48325
Phone: (248) 559-2247
lmasri@cair.com

Dated: February 15, 2016